UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:23-cv-80681

NIA C. SAMUEL,
An Individual,

    Plaintiff,

v.

HYUNDAI CAPITAL AMERICA, INC.,
d/b/a KIA FINANCE AMERICA,
A Foreign Corporation,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, NIA C. SAMUEL ("**Plaintiff**"), brings this action against Defendant, HYUNDAI CAPITAL AMERICA, INC., d/b/a KIA FINANCE AMERICA ("**Defendant**"), a foreign corporation, under the Consumer Leasing Act ("**CLA**"), 15 U.S.C. § 1667, and its implementing regulations, 12 C.F.R. § 1013 *et seq.* ("**Regulation M**").

### JURISDICTION AND VENUE

1. The Court has federal question jurisdiction under 28 U.S.C. § 1331 because the claim arises from the CLA, a federal statute. 15 U.S.C. § 1667d(c).

2. Venue is proper before this Court because the acts and transactions

giving rise to Plaintiff's action occurred in this district, Plaintiff resides in this district, and Defendant transacts business in this district.

## PARTIES

3. Plaintiff is a natural person who at all relevant times resided in Palm Beach County, Florida.

4. Defendant was at all relevant times, doing business in Palm Beach County, Florida.

## NATURE OF ACTION

5. As one district court recognized, "Congress enacted the CLA as an amendment to the [Truth in Lending Act ("**TILA**")] and [thereby] extended the TILA's 'credit disclosure requirements to consumer leases.'" *Clement v. Am. Honda Fin. Corp.*, 145 F. Supp. 2d 206, 209 (D. Conn. 2001) (*quoting Turner v. Gen. Motors Acceptance Corp.*, 180 F.3d 451, 454 (2d Cir. 1999)).

6. The TILA—and, by extension, the CLA—was put in place to protect consumers from obfuscation or misinformation in credit and lease transactions.

7. Congress recognized and sought to remedy the information imbalance in such transactions, particularly for inexperienced or uninformed consumers lacking the financial shrewdness of those companies responsible for extending credit.

## THE CLA

8. "Passed by Congress as an amendment to the Truth in Lending Act [], the CLA purports 'to assure a meaningful disclosure' of personal property lease terms to 'enable the lessee to compare more readily the various lease terms available to him [and] limit balloon payments in consumer leasing.'" *Gaydos v. Huntington Nat. Bank*, 941 F. Supp. 669, 672 (N.D. Ohio 1996) (*quoting* 15 U.S.C. § 1601(b)).

9. The CLA's primary purpose is to:

> "assure a meaningful disclosure of the terms of leases . . . so as to enable the lessee to compare more readily the various lease terms available to him." 15 U.S.C. § 1601(b). Because lease financing had become recognized as an alternative to credit financing and installment sales contracts, Congress also intended CLA disclosure requirements to "enable comparison of lease terms with credit terms where appropriate." Id. The CLA thus requires lessors of personal property subject to its provisions to make specified disclosures when a lease is entered into. *See* 15 U.S.C. § 1667a (consumer lease disclosures).

*Turner*, 180 F.3d at 454.

10. Accordingly, the TILA's "strict liability standard attaches to violations of CLA disclosure requirements as well." *Gaydos*, 941 F. Supp. at 672.

11. Equally important, "[t]he TILA reflects a transition in congressional policy from a philosophy of 'Let the buyer beware' to one of 'Let the seller disclose.'" *Layell v. Home Loan & Inv. Bank, F.S.B.*, 244 B.R. 345, 350 (E.D. Va. 1999) (*quoting Mourning v. Family Publications Serv., Inc.*, 411 U.S. 356, 377 (1973)).

12. Given the CLA's enactment within the same statutory structure, this

philosophy applies with equal force to the CLA and Regulation M.

13. The CLA and Regulation M require that disclosures in a consumer lease be made in a clear and conspicuous manner.

14. Certain disclosures described in Regulation M also must be made in a "segregated" manner:

> The following disclosures shall be segregated from other information and shall contain only directly related information: §§ 1013.4(b) through (f), (g)(2), (h)(3), (i)(1), (j), and (m)(1). The headings, content, and format for the disclosures referred to in this paragraph (a)(2) shall be provided in a manner substantively similar to the applicable model form in appendix A of this part.

12 C.F.R. § 1013.3(a)(2)

15. Those disclosures that must be "segregated from other information" include the following:

> **(i) Purchase option.** A statement of whether or not the lessee has the option to purchase the leased property, and:
>
>> **(1) End of lease term.** If at the end of the lease term, the purchase price[.]

12 C.F.R. § 1013.4.

## FACTUAL ALLEGATIONS

16. In July of 2019, Defendant's agent, Cherry Hill Kia, leased a new 2019 Kia Optima LX/G ("**Vehicle**") to Plaintiff.

17. The Vehicle was leased under a Closed End Motor Vehicle Lease Agreement ("**Lease**") prepared by the Defendant. A copy of the Lease is attached as Exhibit "A."

18. In the Lease, Defendant provided Plaintiff with the option to buy the Vehicle at the end of the lease term: "You have an option to purchase the Vehicle from us at the scheduled end of the Lease Term, AS IS, WHERE IS, from us or a party we designate, for the Residual Value on line 7D above plus a Purchase Option Fee of $300.00. You are also responsible for any official fees, such as those for taxes, tags, license and registration."

19. The total purchase option price was $12,716.70. ("**Purchase Option Price**").

20. The Lease did not disclose any other fees or costs to be added to the Purchase Option Price for Plaintiff to exercise the purchase option.

21. Plaintiff reasonably relied on these terms, including the Purchase Option Price, when agreeing to the Lease.

22. In May of 2022, Plaintiff visited Defendant's agent, Greenway Kia West Palm Beach, to exercise the purchase option.

23. However, to Plaintiff's surprise, Defendant required Plaintiff to pay $22,753[1] to buyout the Vehicle, as well as a $1149.45 "PREDELIVERY SERVICE

---

[1] Upon good information and belief, Plaintiff owed just $17,747.71 to satisfy the balance of the Lease.

CHARGE", a $64.95 "ELECTRONIC REGISTRATION FILING FEE."

24. The payment of $5,005.29, the $1149.45 "PREDELIVERY SERVICE CHARGE", and $64.95 "ELECTRONIC REGISTRATION FILING FEE" were not official fees.

25. Defendant never disclosed the payment of the payment of $5,005.29, the $1149.45 "PREDELIVERY SERVICE CHARGE", and $64.95 "ELECTRONIC REGISTRATION FILING FEE" in the Lease as part of the Purchase Option Price.

26. Defendant's failure to honor the Purchase Option Price in the Lease was the cause of Plaintiff's harm, as Plaintiff was left with no choice but to pay the additional fees that are contrary to the amount stated as the purchase price in the Lease.

## COUNT I AS TO DEFENDANT'S VIOLATION OF FEDERAL CONSUMER LEASING ACT 15 U.S.C. § 1667a

27. The CLA governs the disclosures in the Lease because the lease term ran for 35 months and was for less than $58,300. 15 U.S.C. § 1667(1).

28. Plaintiff is a natural person who leased the Vehicle primarily for personal, family, and household purposes. 15 U.S.C. § 1667(1)-(2).

29. Defendant had to comply with the CLA's disclosure requirements because it was a "lessor" under the CLA.

30. Defendant has leased, offered, or arranged to lease vehicles more than five times in the preceding calendar year or more than five times in the current

calendar year. 15 U.S.C. § 1667(3); Reg. M § 1013.2(h).

31. As described above, Defendant had substantial involvement in the lease transaction with Plaintiff.

32. Upon information and belief, Defendant financially gains on the resale of the vehicle at the end of the Lease term.

33. The Lease is governed by the disclosure requirements of 15 U.S.C. § 1667a and 12 C.F.R. § 213.4.

34. The disclosure of the purchase option price in the Lease had to be accurate, clear, conspicuous, and complete. 12 CFR § 1013.3(a).

35. Defendant violated 15 U.S.C. § 1667 and 12 CFR § 1013.4(i) by choosing not to disclose in the purchase option price payment of $5,005.29, the $1,149.45 "PREDELIVERY SERVICE CHARGE", and $64.95 "ELECTRONIC REGISTRATION FILING FEE" were required to exercise the purchase option at the end of the lease.

36. Defendant violated 15 U.S.C. § 1667 and 12 CFR § 1013.4(i) by choosing not to disclose in the purchase option price that payment of $6,219.69 more than the Purchase Option Price was required to exercise the purchase option at the end of the lease.

37. Defendant violated 12 CFR § 1013.3(a) because the Purchase Option Price was unclear, inaccurate, and incomplete.

38. These omissions were material to Plaintiff's decision to enter into the Lease, and Plaintiff detrimentally relied on these material omissions.

39. Plaintiff suffered financial loss in that Plaintiff more than what the Lease required to buy the Vehicle.

40. Plaintiff also paid an inflated amount as and for sales tax on the buyout transaction.

41. Had Defendant provided an accurate, complete, and clear Purchase Option Price in the Lease, which it was required to do, Plaintiff would have negotiated better terms or declined to lease the Vehicle.

42. Defendant's illegal conduct was the actual and proximate cause of the actual damages suffered by Plaintiff which include, *inter-alia*, an inflated sales tax.

43. Pursuant to 15 U.S.C. § 1640, Plaintiff is entitled to recover actual and statutory damages from Defendant, and reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment against Defendant as follows:

A. Actual and Statutory Damages as provided by law;

C. Pre-judgment and post-judgment interest, as allowed by law;

D. Reasonable attorneys' fees and costs;

E. Injunctive relief requiring Defendant to honor its obligation under its

Lease agreements to sell the leased vehicles for the price identified on the Lease agreement; and

  F. Such other and further relief as is just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

      Respectfully submitted,

      /s/ Joshua Feygin
      **Joshua Feygin, Esq.**
      FLORIDA BAR NO: 124685
      Email:  Josh@jfeyginesq.com
      **JOSHUA FEYGIN PLLC**
      1930 Harrison Street Suite 208 F
      Hollywood, FL 33020
      Telephone: (954) 228-5674
      Facsimile: (954) 697-0357
      *Counsel for the Plaintiff*